**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Charlyn Greene, | ) | |
| | ) | **ORDER GRANTING MOTIONS** |
| Petitioner, | ) | **TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | |
| Nationstar Mortgage, LLC, d/b/a Mr. Cooper, | ) | |
| et al., | ) | Case No. 1:24-cv-087 |
| | ) | |
| Respondents. | ) | |

Petitioner is seeking to quiet title to real property located at 8157 Lennox View Lane, Las Vegas, Nevada (hereafter referred to as the "subject property") that she asserts was wrongfully foreclosed upon by Respondents after Nationstar Mortgage, LLC d/b/a Mr. Cooper breached its contract with her. Now before the court are Motions to Dismiss filed Respondents. (Doc. Nos. 24 and 50).   For the reasons discussed below, the motions are granted.

I.      **BACKGROUND**

A.      **Parties**

Petitioner is apparently a resident of North Dakota.[1]   In her pleadings she named the following entities and individual as Respondents:

- Nationstar Mortgage, LLC d/b/a as Mr. Cooper

- MTC Financial, Inc. d/b/a Trustee Corp, et al.

- GKL Registered Agents of NV, Inc. on behalf of Trustee Corp, et al.

- Debbie Conway, Clark County Recorder's Office, et al.

(Doc. No. 5 at p. 2). As discussed below, she voluntarily dismissed her claims against Respondent Debbie Conway.

---

[1] In her pleadings, Petitioner lists a PO Box in Napoleon, North Dakota, as her address.  (Doc. No. 5 at p. 2).

### B.     Procedural History

Petitioner initiated the above-captioned action *pro se* on May 17, 2024, with the filing of a document captioned "BILL IN EQUITY CLAIM AND SUMMARY OF DETAILED MOTION IN SUPPORT OF PETITION FOR QUIET TITLE AND REQUEST FOR JUDICIAL REVIEW OF ADMINISTRATIVE PROCESS AND REQUEST FOR SUMMARY JUDGMENT." (Doc. No. 1) (emphasis in original). On June 14, 2024, Petitioner filed a document captioned "FIRST AMENDED BILL IN EQUITY CLAIM AND SUMMARY OF DETAILED MOTION IN SUPPORT OF PETITION FOR QUIET TITLE AND REQUEST FOR JUDICIAL REVIEW OF ADMINISTRATIVE PROCESS AND REQUEST FOR SUMMARY JUDGMENT." (Doc. No. 5) (emphasis in original). The court construes these documents as Petitioner's Complaint and Amended Complaint and will refer to them as such.  What follows is a timeline of the parties' subsequent filings:

- June 18, 2024: Respondents Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Nationstar") and MTC Financial, Inc. d/b/a Trustee Corp., and Trustee Corp. (collectively "MTC") filed a Motion to Dismiss. (Doc. No. 11).

- July 3, 2024: Petitioner filed a "Motion for Clerk's Default." (Doc. No. 15). Petitioner also filed a Stipulation of Dismissal wherein she asked the court "to remove Respondent Debbie Conway d/b/a Clark County Recorders Office from this action." (Doc. No. 16).

- July 3, 2024: Nationstar filed: (1) a response to Petitioner's "Motion for Clerk's Default" (Doc. No. 17); and (2) Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 23).

2

- July 3, 2025: MTC filed a response in opposition to Petitioner's "Motion for Clerk's Default." (Doc. No. 18).

- July 15, 2024: Petitioner filed document captioned "BILL IN EQUITY MOTION IN SUPPORT OF CLAIM FOR QUIET TITLE AND REQUEST FOR JUDICIAL REVIEW OF ADMINISTRATIVE PROCESS AND REQUEST FOR SUMMARY JUDGMENT." (Doc. No. 28). For the purposes of this order, the court shall refer to this document as Petitioner's motion to quiet title and for summary judgment. Petitioner also filed a response in opposition to the Motions to Dismiss filed by Nationstar and MTC and a reply in support of "Motion for Clerk's Default." (Doc. Nos. 30 and 31).

- July 30, 2024: Petitioner filed a "Motion for Summary Default Judgment ie; CONFESSED JUDGMENT." (Doc. No. 34)

- July 30, 2024: Nationstar filed a reply in support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 35). It also filed a combined (1) response to Petitioner' s motion to quiet title and for summary judgment, (2) response to Petitioner's "Motion for Summary Default Judgment ie; CONFESSED JUDGMENT," and (3) a Countermotion for Summary Judgment. (Doc. Nos. 36 and 42).

- August 15, 2024: Petitioner filed a combined (1) response in opposition to Nationstar's Countermotion for Summary Judgment, and (2) motion to strike the reply brief filed by Nationstar in support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 46).

- September 16, 2024: MTC filed an Amended Motion to Dismiss. (Doc. No. 50).

- October 3, 2024: Petitioner filed a combined (1) response to MTC's Amended Motion to Dismiss, and (2) "Request for Summary Judgment on the Pleadings." (Doc. No. 52).

- October 24, 2024: Nationstar filed a motion requesting a hearing on its pending motions. (Doc. No. 54).

- October 29, 2024: Petitioner filed a combined (1) Motion in Support of Striking All Filings by Respondents; and (2) Motion for Summary Judgment. (Doc. No. 56).

- November 27, 2024: Petitioner filed a combined (1) Motion to Strike All Filings by Respondents; and (2) Motion for Summary Judgment. (Doc. No. 60).

On December 2, 2024, the court issued an order in which it: (1) denied Petitioner's Motion for Default Judgment (Doc. No. 15); (2) adopted Petitioner's Stipulation of Dismissal (Doc. No. 16), which it construed as a notice of voluntary dismissal of Petitioner's claims against Respondent Debbie Conway d/b/a Clark County Recorders Action ("Conway"), and dismissed Petitioner's claim(s) against Conway; (3) denied Petitioner's "Motion for Summary Default Judgment ie; CONFESSED JUDGMENT" (Doc. No. 34); (4) denied Petitioner's Motions to Strike All Filings by Respondents (Doc. Nos. 56 and 60); (5) deemed as moot the Motion to Dismiss filed by Nationstar and MTC on September 16, 2024 (Doc. No. 11); (6) denied without prejudice Nationstar's motion for a hearing on its pending motions (Doc. No. 54); and (7) stayed this action pending further order.  (Doc. No. 61).

On April 2, 2025, Petitioner filed a Motion to Strike and Motion to Lift Stay. (Doc. Nos. 62 and 63). On January 14, 2026, the court issued an order denying both motions. (Doc. No. 68).

4

### B.    Petitioner's Claims

Petitioner's Amended Complaint suggests the following. Petitioner pledged the subject property as collateral to secure a loan from Nationstar for purchase of the subject property. (Doc. No. 5).  On March 20, 2024, Petitioner conveyed the subject property into an inter vivos private trust,  TRIPLE BRAIDED COURT TRUST per the *The Garn-St. Germain Depository Institutions Act of 1982*."  (*Id*. at p. 4) (emphasis in the original).  On May 10, 2024, Nationstar foreclosed on the subject property through trustees MTC. (*Id*. at p. 6).

Petitioner alleges in her Amended Complaint that she "made full and complete compensation per presentment contract requested by [Nationstar]" to satisfy the aforementioned loan. (*Id.* at pp. 4). Petitioner further alleges that Nationstar breached its contract, wrongfully foreclosed on the subject property, and clouded title by selling the subject property at auction. (*Id.* at pp. 4-5). Finally, she alleges that, by auctioning off the property, MTC "trafficked on the private Trust." (*Id*. at p. 6).  Under the heading "Remedy/Relief," she requests, inter alia, (1) damages from Nationstar equal to the negotiable instrument she had given to Nationstar to satisfy her outstanding debt; (2) damages from Nationstar for its unlawful debt collection practices; and (3) damages from MTC for its role in the foreclosure and sale of the subject property; and (4) the return of legal ownership of the subject property to the Triple Braided Cord Trust. (*Id.* at pp. 9-11).

### C.    Motions to Dismiss

To recap, currently before the court  is a Motion to Dismiss filed by Nationstar on July 3, 2024, and an Amended Motion to Dismiss filed by MTC on September 16, 2024.  (Doc. Nos. 23 and 50).[2]  In the respective motions, Nationstar and MTC assert the following.  First, this court

---

[2] Nationstar has attached the following documents to its motion: (1) a grantor deed dated March 7, 2024, in which Petitioner granted, among other things, the Triple Braided Corded Trust title to the subject property "[f]or and in

lacks jurisdiction over a claim to quiet title to property in Nevada. Second, venue in the District of North Dakota is improper.  Third, Petitioner has failed to state  viable claims for relief. Nationstar further asserts that Petitioner otherwise lacks standing to unwind the foreclosure sale and quiet title to the subject property as, by her own admission, she no longer owned the subject property at the time it was foreclosed upon and sold.

Nationstar's and MTC's respective Motions to Dismiss have now been fully briefed and are ripe for the court's consideration.

## II.      APPLICABLE RULES

### A.      Fed. R. Civ. P. 12(b)(1)

Parties may assert a lack of jurisdiction by motion under Fed. R. Civ. P.  12(b)(1).  This defense may be brought in two ways: by facial attack or by factual attack.  Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015).  A facial attack simply asserts that the plaintiff has not pleaded a basis for subject matter jurisdiction.  Id.  In a facial attack, the court must afford the non-moving party the benefit of the Rule 12(b)(6) safeguards, and it may only consider the pleadings and "materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'"  *Carlsen v. GameStop, Inc*., 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Cox v. Mortg. Elec. Registration Sys., Inc.,* 685 F.3d 663, 668 (8th Cir. 2012)).  A factual attack asserts the actual existence of subject matter jurisdiction is lacking "irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Branson Label*,

---

consideration of the total sum of zero "dollars" ($0.00) and no other good and value consideration," (2) a Certificate of Trust that names Petitioner and the JKPE Trust as trustees of the Triple Braided Cord Trust; (3) a copy a Complaint and Request for Emergency Preliminary Injunction filed by the Triple Braided Cord Trust with the United States District Court in Nevada on May 8, 2024, seeking to, inter alia, enjoin Nationstar and MTC from foreclosing on the subject property; and (4) an order issued by district court in Nevada denying the Triple Braided Cord Trust's emergency motion to prohibit Nationstar and MTC auctioning the subject property.  (Doc. Nos. 24-1, 24-2, and 24-3).

793 F.3d at 914-15 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

    **B.    Fed. R. Civ. P. 12(b)(6)**

    Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted.

    In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must show that success on the merits is more than a "sheer possibility." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." *Id.* at 681. *Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. Detailed factual allegations are not necessary under the Rule 8 pleading standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (2009). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679.  Dismissal will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts entitling the plaintiff to relief.  *Ulrich v. Pope Cnty*, 715 F.3d 1054, 1058 (8th Cir. 2013).

## III.  DISCUSSION

### A.  Jurisdiction

Nationstar moves to dismiss in part on the ground that this court lacks jurisdiction over Petitioner's quiet title claim under the local action doctrine, which has traditionally vested jurisdiction over specified types of actions involving real property in the forum where that property is located. It further asserts that venue in the District of North Dakota is improper as Petitioner's claim to quiet title is local in nature and must be brought in Nevada, the state where the subject property is located.[3]

---

[3] The propriety of the selected venue is governed 28 U.S.C. § 1391.  *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013) (opining that § 1391 "shall govern the venue of all civil actions brought in district courts of the United States."). Section 1391(b) provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1-3). Venue only needs to be proper under one of the three subsections to § 1391(b). *Atl. Marine Constr. Co., Inc.* , 571 U.S. at 56.  Venue is improper if not covered under § 1391(b), at which point the case "must be dismissed or transferred." *Id.* Transfer is appropriate when it is "in the interest of justice." 28 U.S.C. 1406(a).

It is apparent from the record that venue in the District of North Dakota is improper. First, none of Respondents are alleged to be residents of North Dakota. (Doc. No. 5 at pp. 2 and 3).  Second, the subject property is not located in the District of North Dakota and the Amended Complaint is devoid of any allegations that a substantial part of the events or conduct giving rise to Petitioner's claims occurred in North Dakota. (*Id.* at p. 4). Finally, there is another district in which Petitioner could have filed her quiet title claims—the District of Nevada.

Under the present circumstances, transferring Petitioner's quiet title claim to the District of Nevada would serve the be in the interests of justice.  Rather, it would result in the needless expenditure of additional judicial resources and resources of the parties.  As discussed later in this order, Petitioner lacks standing to assert a quiet title claim, cannot otherwise serve as the Triple Braided Trust's advocate in this action, and has failed to assert cognizable claim for breach of contract and violations of the Fair Debt Collection Practices Act.

### 1.    Local Action Doctrine

The local action doctrine is rooted in the English common-law rule dictating that lawsuits directly affecting the title or possession of real estate must be filed in the geographical jurisdiction where the property is located. *See Van Beek v. Ninkov*, 265 F. Supp. 2d 1037, 1043 (N.D. Iowa 2003) (noting the common law's distinction between "local actions" and "transitory actions"); *see also Bigio v. Coca–Cola Co.*, 239 F.3d 440, 449–50 (2nd Cir. 2000) ("Under the local action doctrine, courts may not exercise jurisdiction over any 'local' action involving real property unless the property at issue is found within the territorial boundaries of the state where the court is sitting."); *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir.1987) ("A local action involving real property can only be brought within the territorial boundaries of the state where the land is located.").

The emergence and effect of the local action doctrine was summarized as follows by the court in *Van Beek v. Ninkov*:

> The local action doctrine's American roots trace back to *Livingston v. Jefferson*, 15 F. Cas. 660 (C.C.D.Va.1811). In *Livingston*, a Louisiana landowner sued former president Thomas Jefferson in a federal court in Virginia for an alleged trespass to his land. Chief Justice John Marshall, sitting as a circuit judge, dismissed the action. Emphasizing that "actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere ... but are local where their cause is in its nature necessarily local," Justice Marshall determined that an action for trespass to land in Louisiana was local and could not be heard in a Virginia court. *Id.* at 664.
>
> A central tenant of the local action rule is to prevent courts unfamiliar with local property rights and laws from interfering with title to local real property. As the court explained in *Livingston*:
>
>> the title and bounds of land may come in question: and who so proper to decide on them as one's neighbors, who are much better acquainted with each other's lines, and everything else which may lead to a fair decision? In any action of this kind [trespass q.c.f.], it

9

> may be necessary to direct a survey and lay down the pretensions of both parties; for, the defendant has a right to show in himself, a better title, and defend himself on that title.

*Livingston,* 15 F. Cas. at 662. Subsequently, the Supreme Court observed over a century ago:

> The distinction between local and transitory actions is as old as actions themselves, and no one has ever supposed that laws which prescribed generally where one should be sued, included such suits as were local in their character, either by statute or the common law, unless it was expressly so declared. Local actions are in the nature of suits in rem, and are to be prosecuted where the thing on which they are founded is situated.

*Casey v. Adams*, 102 U.S. 66, 67–68, 26 L.Ed. 52 (1880). One commentator has noted that when real property is involved in an action:

> [t]he traditional distinction [between local and transitory actions] is the same as the traditional division between in personam and in rem jurisdiction. The reason for this parallel is that, in order to provide *in rem* relief, the court must have jurisdiction over the real property at issue, and a local action must therefore be brought in a jurisdiction in which the real property is located.

17 James Wm. Moore et al., Moore's Federal Practice, § 110.20 (3d ed. 2002).

265 F. Supp. 2d 1037, 1044 (N.D. Iowa 2003).

### 2. Application of the Local Action Doctrine

Courts are split as to whether the local action doctrine implicates jurisdiction, *see e.g., Eldee-K Rental Props., LLC v. DIRECTV, Inc.*, 748 F.3d 943, 948–49 (9th Cir. 2014); *Bigio v. Coca–Cola Co.*, 239 F.3d 440, 443 (2nd Cir. 2000) (assuming the local action doctrine is jurisdictional); *Hayes v. Gulf Oil Corp.,* 821 F.2d 285, 287 (5th Cir.1987) (recognizing that "federal and state courts lack jurisdiction over the subject matter of claims to land located outside the state in which the court sits"); *MTB Enters., Inc. v. Fed. Deposit Ins. Corp.*, No. CV 09-5091, 2009 WL 10708333, at \*4 (W.D. Ark. Oct. 1, 2009) ("This Court agrees that the local action doctrine raises more than venue -- it affects the Court's jurisdiction to decide issues relating to

[out-of-state] property."); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3822 (noting that a majority of federal courts have concluded that the local action doctrine is a rule of subject matter jurisdiction), or merely venue, *see e.g.*, *Greeley v. Walters,* No. CIV. 10-5003, 2011 WL 941362, at *1, 2011 U.S. Dist. LEXIS 28917, at *1 (D.S.D. Mar. 16, 2011) (finding subject matter jurisdiction "premised upon diversity of citizenship and damages in excess of $75,000" without regard for the local action doctrine); *Fisher v. Va. Elec. & Power Co.*, 243 F. Supp. 2d 538, 557–59 (E.D. Va. 2003) (finding the "arguments in favor of treating the local action doctrine as a matter of venue [as] many, timely, and moving"); *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 648 (N.D. Okla. 2000) ("[T]he local action doctrine affects venue and not subject matter jurisdiction."); *see also Rowe v. Aurora Com. Corp.*, No. 13-21369, 2014 WL 3810786, at *3 (S.D. W. Va. Aug. 1, 2014) (noting the split between the local action doctrine as jurisdictional or venue), *aff'd*, 599 F. App'x 95 (4th Cir. 2015).

This court finds that the Fifth Circuit's analysis in *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 290 (5th Cir. 1987) is both instructive and persuasive. After citing a multitude of cases holding that a local action involving real property can only be brought where the land is located, the Fifth Circuit rationalized the need for the rule as follows:

> If litigants were free to file claims to the same Colorado real property in different federal and state courts throughout the country, the State of Colorado could not give conflicting judgments full faith and credit. More significantly, title to real estate would never be certain again since it could be involved in unknown claims in unknown fora with no practical method for control of liens, lis pendens or priority of title claims. State land title records would become unmanageable. The local action rule prevents courts unfamiliar with local property rights and laws from interfering with title to real property which must be recorded under a unitary set of rules to keep it free of conflicting encumbrances. These local rules ensure that real property actions will be tried in a convenient forum and that orderly notice to all interested parties -- through Colorado land title records -- will be facilitated.

*Hayes*, 821 F.2d at 291. It then went on to opine "[t]he assertion that an action is local raises more than the court's venue." *Id.*

The Ninth Circuit's analysis in *Eldee-K Rental Props* is likewise instructive. There, the Ninth Circuit recognized the continued applicability of the local action doctrine with respect to jurisdiction despite amendments made by Congress in 2011 to the federal venue statutes that effectively eliminated the use of the local action doctrine in venue decisions.

> In [*Ellenwood v. Marietta Chair Co.,*], the Supreme Court confirmed that a federal court lacked jurisdiction over a local action involving real property situated in a different state. *See Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 107–08, 15 S.Ct. 771, 39 L.Ed. 913 (1895). [There], the Court considered an action brought in a federal circuit court in the Southern District of Ohio against an Ohio corporation for trespass on land situated in West Virginia. *Id.* at 106, 108, 15 S.Ct. 771. The Court sua sponte dismissed the action for lack of jurisdiction, because "an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies." *Id.* at 107, 15 S.Ct. 771. Because the "entire cause of action was local," the Court concluded that the federal court "had no jurisdiction of the cause of action, and for this reason, if for no other, rightly ordered the case to be stricken from its docket, although no question of jurisdiction had been made by demurrer or plea." *Id.* at 108, 15 S.Ct. 771.
>
> The Supreme Court has sometimes applied this doctrine narrowly. In *Stone v. United States*, for instance, the Court held that, where the gravamen of an action is conversion of lumber and the complaint demanded the value of the personal property taken, rather than stating a claim for trespass that sought damages for the harm to the land caused by the trespass, as in *Ellenwood*, then the action was transitory and the local action doctrine was not applicable. 167 U.S. 178, 182, 17 S.Ct. 778, 42 L.Ed. 127 (1897). But the Supreme Court has not overruled the doctrine, and has referenced it in cases decided after *Ellenwood. See, e.g., Philadelphia Co. v. Stimson*, 223 U.S. 605, 622, 32 S.Ct. 340, 56 L.Ed. 570 (1912) (holding that a District of Columbia court had jurisdiction over a dispute regarding the federal government's statutory authority to encroach on the plaintiff's property in Pennsylvania because, among other reasons, the action was not "to restrain trespass" as in *Ellenwood* ); *Dull v. Blackman*, 169 U.S. 243, 246–47, 18 S.Ct. 333, 42 L.Ed. 733 (1898) (noting that a dispute was a local action and had to be litigated in the state where the land was situated, though a dispute that "did not operate directly upon the lands" could be brought in a different state).
>
> * * *
>
> Venue and subject matter jurisdiction are distinct concepts, and Congress's rejection of the local action doctrine in the venue context does not overrule the

Supreme Court's prior determination that the local action doctrine is jurisdictional. We are bound by *Ellenwood* until either the Supreme Court rules otherwise, *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), or Congress enacts an applicable jurisdictional statute.

*Eldee-K Rental Props., LLC v. DIRECTV, Inc.*, 748 F.3d 943, 949 (9th Cir. 2014).

Accordingly, this court agrees that the local action doctrine raises more than venue—it affects the Court's jurisdiction to decide issues relating the subject property, which is located in Nevada.

Nevada law governs whether this action is local or transitory in nature. S*ee Huntington v. Attrill*, 146 U.S. 657, 669–70 (1892).  The Nevada Supreme Court has made it clear that, in Nevada, a quiet title action is recognized as *in rem or quasi in rem* action given that a  plaintiff's right to relief is dependent upon the superiority of title.

> Even though a judgment quieting title vests title in a particular claimant, and to that extent affects the interests of persons, see Restatement (Second) of Judgments § 6 cmt. a (1982), its essential purpose is to establish superiority of title in property. *Arndt v. Griggs*, 134 U.S. 316, 321, 10 S.Ct. 557, 33 L.Ed. 918 (1890). This is quintessentially a manifestation of an in rem or quasi in rem proceeding. *See Seitz*, 909 F.Supp.2d at 503–504, 2012 WL 5523078, at *11 (holding that a suit to quiet title is either in rem or quasi in rem); *1st Nat'l Credit Corp. v. Von Hake*, 511 F.Supp. 634, 641–42 (D.Utah 1981) (commenting on the semantic differences between in rem and quasi-in-rem labels and holding that the Utah statutory action to quiet title is an action in rem, or quasi in rem); see also *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 589 (9th Cir.1992) ("A quiet title action is a proceeding in rem."); *Neagle v. Brooks*, 373 F.2d 40, 43 (10th Cir.1967) (quiet title is "purely an in rem action"); Restatement (Second) of Judgments § 30 cmt. a (1982) (actions "to quiet or remove a cloud on title" are quasi in rem because the judgments they produce determine interests in property); Restatement (Second) of Conflict of Laws § 95 cmt. f (Supp. 1989) (deeming quiet title actions quasi in rem because judgments rendered in them affect the interests of particular persons in property).

*Chapman v. Deutsche Bank Nat'l Tr. Co.*, Nev. 314, 317, 302 P.3d 1103, 1105 (2013).

In light of the foregoing, the court concludes that Petitioner's claims will require it to act directly against title to the property located in Nevada. This court lacks *in rem* jurisdiction over

property in Nevada. Accordingly, the court concludes that Petitioner's claims are subject to dismissal. The court recognizes that interspersed throughout Petitioner's Amended Complaint are allegations of or references to a breach of contract and unlawful debt collection practices as well as a request for monetary damages. This does not change the fundamental nature of this action however as the central relief that Petitioner seeks is to quiet title. *Id.* (concluding that, regardless of a plaintiff's allegations of breach of contract and incorporated foreclosure statutes, an action was *in rem* given that plaintiff sought to establish title to property).

### B.    Standing

Petitioner acknowledges in her Amended Complaint that she transferred title to the subject property to the Triple Corded Braid Trust before the subject property was foreclosed upon. She seeks to restore the Triple Corded Braid Trust's title to the subject property. Seizing upon this, Nationstar maintains that Petitioner lacks standing to proceed with her quiet title claim.

In order to have standing, a party must have a "case or controversy" under Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum of standing" consists of three elements. *Id.* at 560. First, a party must have suffered an "injury in fact," an actual or imminent concrete and particularized invasion to a legally protected interest; second, the injury must be fairly traceable to the challenged action of the defendant; and third, the injury must be redressable by a favorable decision. *Id.*

"Even if a plaintiff meets the minimal constitutional requirements for standing, there are prudential limits on a court's exercise of jurisdiction." *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1378 (8th Cir.1997). "As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) (quoting *Warth v.*

14

*Seldin*, 422 U.S. 490, 498–99 (1975); *see also Beazer Homes Holding Corp. v. Eighth Jud. Dist. Ct.,* 128 Nev. 723, 731, 291 P.3d 128, 133 (2012) (opining that "a party generally has standing to assert only its own rights").

"A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *RH Kids, LLC v. Newrez LLC*, 565 P.3d 1284 (Nev. App. 2025) (quoting *Chapman*, 129 Nev. at 318-19, 302 P.3d at 1106). "In addition, a party must have an interest in real property in order to maintain a claim for quiet title." *Id.* (*Majuba Mining v. Pumpkin Copper*, 129 Nev. 191, 193, 299 P.3d 363, 364 (2013). Moreover, to bring a claim for declaratory relief, a plaintiff must have standing." *Id.* (citing *Knittle v. Progressive Cas. Ins. Co.*, 112 Nev. 8, 10, 908 P.2d 724, 725 (1996) (requiring a plaintiff to establish standing to assert a claim for declaratory relief by establishing the existence of, among other things, a justiciable controversy, a legally protectable interest, and an issue ripe for determination).

Petitioner admittedly relinquished title of the subject property prior to the initiation of the foreclosure proceeding in Nevada with which she now takes issue.  As she no longer owned or otherwise had an interest in the subject property at the time of the foreclosure, she did not suffer an injury in fact necessary to confer her with standing.

Plaintiff does not otherwise have third-party standing to assert the rights of the Braided Cord Trust, the entity to which she relinquished title of the subject property prior to foreclosure. "Third-party standing is an exception to the general rule that a plaintiff may only assert his own injury in fact and permits a litigant who lacks a legal claim to assert the rights of a third party." Hodak v. City of St. Peters, 535 F.3d 899, 904 (8th Cir. 2008).  Before a plaintiff is permitted to assert the rights of another, she must show that there is some barrier or practical obstacle that

prevents or deters the other from asserting its own interest. *Id.* Petitioner has made no such showing here.

Petitioner cannot otherwise proceed against Respondents on behalf of the Triple Braided Cord Trust. Petitioner is not an attorney licensed to practice law in this district (or any other district of which the court is aware). Consequently, she cannot represent others in a representative capacity. *See Jones ex. rel.*, 401 F.3d at 952 (8th Cir. 2005) (affirming the district court's order of dismissal on motion by a defendant of an action filed by a non-attorney on behalf of others); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("[C]ourts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity."); *see e.g., Emrit v. Burnett, et al.,* No. 1:25-CV-00988-SMD-GJF, 2025 WL 3111012, at *2 (D.N.M. Nov. 6, 2025) (opining that Emrit could not assert claims on behalf of his "committee" or other persons as he was not an attorney authorized to practice in the District of New Mexico).

### C.   Failure to State a Claim

The Eighth Circuit has instructed that a court is to apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." *Karnatcheva v. JPMorgan Chase Bank*, NA, 704 F.3d 545, 548 (8th Cir. 2013).

First, Petitioner asserts no claims against it specifically against Respondent GKL Registered Agents of NV, Inc. in her Amended Complaint. Rather, her focus is on Nationstar, MTC d/b/a Trustee Corps, and Trustee Corps.

Insofar as Petitioner alleges that Nationstar is liable for the face value of the negotiable instrument, she has failed to state a cognizable claim. Petitioner avers face value of the negotiable instrument is $430,681.29. However, she does not make it clear to what negotiable instrument she

16

is referring and her use of buzzwords and passing references to various legal concepts with little in the way of clear factual allegations renders her Amended Complaint largely impenetrable.

Petitioner has likewise failed to assert a cognizable claim for violations of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff seeks monetary damages for Nationstar's alleged violation of the FDCPA. However, she does not identify what provisions of the FDCPA Nationstar alleged violated much explain how Nationstar violated them.

### D.      Viability of Petitioner's Request for Declaratory Relief

Nationstar asserts that, insofar as Petitioner seeks an order prohibiting it from collecting on the mortgage loan, declaratory relief is not available. The court agrees.

Petitioner can only pursue a claim for declaratory relief if there is a "justiciable controversy between personas with adverse interests," *Cnty. of Clark, ex rel. U. Med. Ctr. v. Upchurch*, 961 P.2d 754, 756 (Nev. 1998). There does not appear to be any such controversy. As alleged in the Amended Complaint, Nationstar has already foreclosed on the subject property and has already recovered what is due and owing on the loan. Thus, it stands to reason that it no longer seeks to collect any amounts on the loan. As consequence, its interests are not adverse to Petitioner's and declaratory relief is not available. The only relief now available is a claim for quiet title, which the court has addressed above.

## IV.      CONCLUSION

For the reasons set forth above, Nationstar's Motion to Dismiss (Doc. No. 23) and MTC's Amended Motion to Dismiss (Doc. No. 50) are **GRANTED** and the above-captioned action is dismissed without prejudice for lack of jurisdiction over the quiet title claim and failure to state claims for breach of contract and/or violations of the FDCPA.

17

**IT IS SO ORDERED.**

Dated this 24th day of July, 2026.

>                    */s/ Clare R. Hochhalter*
>                    Clare R. Hochhalter, Magistrate Judge
>                    United States District Court